UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | Case No. 4:09CR00244 ERW |
| KENNETH HIBBERT, | ) | |
| Defendant. | ) | |

**MEMORANDUM AND OPINION**

This matter comes before the Court on the United States' motion to revoke Defendant's supervised release. A hearing was conducted on May 21, 2009, on the motion where the Government was represented by Assistant United States Attorney, Jennifer Winfield and Defendant was present and represented by Assistant Federal Public Defender, Janice Good. Defendant contested the allegations of the report of the Probation Office which alleged one Grade A violation for commission of a state crime, a Grade C violation for leaving the judicial district without permission, and a Grade C violation for failure to notify the probation officer ten days prior to any change of residence or employment. Witnesses were called. The Court closed the evidence. Thereafter, the Government filed a Motion for Reconsideration of the May 21, 2009 Supervised Release Hearing [doc. #17], wherein Ms. Winfield sought to re-open the hearing to adduce additional evidence. Defendant filed a Response resisting that motion [doc. #18]. The Court shall now indicate how it intends to rule the pending motions, reserving a ruling until the parties reappear in open court where further arguments may be presented.

I. **BACKGROUND**

Emily Poehling testified as Defendant's probation officer that Defendant Kenneth Hibbert has been under her supervision since April 13, 2007, in case no. 99-04025-01-CR- C-5, upon

transfer of jurisdiction from the Western District of Missouri. After being sentenced, and after completing a prison term of 110 months for the crime of Conspiracy to Manufacture and Distribute Methamphetamine as proscribed by 21 U.S.C. §846, a Class A felony, Defendant performed well on supervision until a report was generated December 17, 2008, noting a misdemeanor violation which is not listed for purposes here as a violation of supervised release. Next, a violation report recites that Defendant was arrested March 2, 2009, by the Farmington, Missouri Police Department on charges of Possession of Methamphetamine, Possession of Ephedrine, Possession of Precursor with the Intent to Manufacture Methamphetamine and Unlawful Use of Drug Paraphernalia. Thereafter, Ms. Poehling was notified that Defendant had been arrested by the Joplin, Missouri Police Department for "obstruction and possession of ephedrine." Defendant did not notify Ms. Poehling of this arrest. His next reported violation, she recounts, was for traveling outside the District. During cross-examination, Defendant's counsel represented that Defendant was never charged with the Farmington offense.[1] There is also a pending violation for failure to notify the probation officer ten days prior to any change of residence or employment.

Clifton Bone, a Farmington, Missouri police officer testified that on March 2, 2009, he

---

[1] See *Schneider v. Housewright*, 668 F.2d 366, 368 (8th Cir. 1981) (to justify revocation, enough evidence is required to satisfy the court that probationer's conduct has not met the conditions of probation; all is required is that the court, in its discretion, is satisfied the probationer abused the opportunity granted to him not to be incarcerated); *United States v. Wynn*, 553 F.3d 1114, 1118 (8th Cir. 2009) (a district court may revoke probation within sound judicial discretion to satisfy the judge that conduct of probationer has not met the condition of probation); and *United States v. Poellnitz*, 372 F.3d 562, 566 (3rd Cir. 2004) (a court can revoke probation when it is reasonably satisfied that the probation conditions have been violated, without the government being required to present proof beyond a reasonable doubt that defendant committed the alleged acts; when the condition is that defendant not commit a crime, there is no requirement of conviction or even indictment).

responded to a call from a manager at a Super 8 Motel after being advised that the person occupying the room had not checked out before check-out time and was not responding to knocks on the door of the assigned motel room. Officer Bone testified that fire department personnel, ambulance personnel and police department personnel all promptly responded to the motel location, after the motel operator reported that there was someone in the room who was not answering a knock on the door. After the motel room was opened with a supplied key, Officer Bone and Officer Spiker entered the room and observed a "male lying face down on the bed unresponsive to us." Lieutenant Bullock was also present. The person, later identified as Defendant, had to be shaken several times before he awoke. He was lying on his hands and refused to show them on command. Officer Bone and Officer Spiker each grabbed an arm to be assured there were no weapons in his hands. A pat-down search of Defendant revealed a cellophane baggy of pills and a syringe. A further search of Defendant's clothing revealed "what appeared to be methamphetamine and also a razor knife with extra blades in his pocket." Officer Bone testified that he observed nine baggies with the corners cut off, in the trash can. Defendant asked the officers, "Why are you here?"

Jason Stacy testified as a Narcotics investigator for the Farmington, Missouri Police Department. He "field-tested" a "moderate amount . . . which [was] consistent with Methamphetamine, a white grayish powdery substance, syringes, paraphernalia such as cellophane bags with corners cut out typically used to package narcotics." A field-test of the cellophane bag (Gov. Ex. F) showed a substance consistent with Methamphetamine.

After Defendant was Mirandized, he was questioned and he told the officers that he had been living in Festus and went to Farmington to "party," stating that "he was there to consume some drugs with some friends and have sex with females." Officer Bone testified that Defendant

3

told him that "he had been partying the last two nights on Methamphetamine[, . . .]" and that Melissa Osborn "had a baggy of Methamphetamine that she cut, separated and packaged in front of him; before he actually fell asleep." She had given him what he thought was an 80 milligram pill which he injected.

## II. DISCUSSION

The statutory reference for revocation of supervised release is 18 U.S.C. § 3583(e)(3).[2] In the event of a finding by the Court that Defendant committed a Grade A violation of supervised release by committing another state offense, the advisory range under the United States Committed Sentencing Guidelines with a Criminal History Category of V would be a sentence of imprisonment of 46-57 months. The guideline range for a grade C violation of supervised release and a Criminal History Category of V would be a term of imprisonment of 7 to 13 months.

After Officer Bone concluded his testimony, the United States rested, Defendant adduced no evidence and the Court declared, "[e]vidence is concluded and I'll hear argument."

After the arguments were presented, the Court announced that "clearly[,] I think the C violations are proved, . . ." Ms. Good, Defendant's counsel wisely and correctly observed that "there is no proof before the Court as to the identity of any of that material." Ms. Winfield, Assistant United States Attorney, responded that "there is no crime lab results at this point in

---

[2]18 U.S.C. §3583(e)(3) provides:

(e) Modification of conditions or revocation. - The court may, after considering the factors set forth in section 3553 (a)(1), (a)(2)(B), (a)(2)(C), (a)(4), (a)(5), (a)(6) and (a)(7).

**(3)** revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, if the court, pursuant to the Federal Rules of Criminal Procedure applicable to revocation of probation or supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release, . . .

4

time. The evidence is still being processed." She offered to wait until the drug test results were available. The Court announced that the evidence was closed and "that wouldn't be permissible as to possession of methamphetamine." The Court announced that satisfactory proof had not been adduced that Defendant committed the crime of possessing Methamphetamine "because there's no drug test to prove that it was Methamphetamine." The Court announced its finding that Defendant did not possess Methamphetamine.

Thereafter, Ms. Winfield sought leave of Court to reopen the evidence to adduce test results from a crime lab concerning the material seized from Defendant. Over objection of Ms. Good, with Defendant present, on July 1, 2009, the Court heard arguments, first from Ms. Winfield, then from Ms. Good on the issue of whether the evidence should be re-opened to allow Ms. Winfield to introduce Government's Exhibit 2 under Fed. R. Evid. 902 subsection 11[3] -- the declaration of a person from the Missouri State Highway Patrol Crime Laboratory. To support

---

[3] **(11) Certified Domestic Records of Regularly Conducted Activity.**--The original or a duplicate of a domestic record of regularly conducted activity that would be admissible under Rule 803(6) if accompanied by a written declaration of its custodian or other qualified person, in a manner complying with any Act of Congress or rule prescribed by the Supreme Court pursuant to statutory authority, certifying that the record--

- **(A)** was made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters;

- **(B)** was kept in the course of the regularly conducted activity; and

- **(C)** was made by the regularly conducted activity as a regular practice.

A party intending to offer a record into evidence under this paragraph must provide written notice of that intention to all adverse parties, and must make the record and declaration available for inspection sufficiently in advance of their offer into evidence to provide an adverse party with a fair opportunity to challenge them.

Federal Rules of Evidence Rule 902, 28 U.S.C.A.

her argument for admissibility of Government's Exhibit 2, Ms. Winfield relies on *United States v. Redd,* 318 F.3d 778, 785 (8th Cir. 2003) (there was no error where California technician's report of sweat patch analysis was received in evidence and relied on by judge to revoke supervision and sentence a defendant over objection that there was no one present in court to lay foundation for report and answer to cross-examination was not error); *United States v. Farmer,* 567 F.3d 343, 347(2009) (the standard for admitting hearsay in a revocation hearing is different than at a trial on the merits; the federal rules of evidence do not apply, but the rules of criminal procedure afford a defendant the opportunity to question adverse witnesses at the hearing, unless the court determines that justice does not require the witness to appear), and *United States v. Ray,* 530 F.3d 666, 668 (8th Cir. 2008) (there was no error in admitting officer's hearsay statement received in revocation hearing which is not equated with a criminal trial, and full protection provided to criminal defendants under the Sixth Amendment right to confrontation does not apply to revocation cases). Ms. Winfield further argues there are no Sixth Amendment violations because under *Crawford v. Washington,* 541 U.S. 36 (2004), since this is a hearing to revoke supervised release, the documentary evidence in the form of lab results provide *indicia* of reliability and the hearsay objection is not well-placed.

Ms. Good counters with the anticipated argument that the evidence has been closed, and to allow the proffered Exhibit 2 would be manifestly unfair because at the first hearing, the prosecution argued that the possession of drug paraphernalia was a Class A violation, and now, the Government wants to introduce lab results showing possession of Methamphetamine, a *Crawford v. Washington* violation and a violation under *Melendez DS v. Massachusetts*, WL

1789468, holding that the Confrontation Clause requires actual testimony.[4] Ms. Good also posits that Fed. R. Crim. P. 32.1[5] requires that Defendant be given due process rights which would be violated with admission of Government's Exhibit 2. She also states that chain of custody evidence is missing.

The most critical question for resolution is whether the Government's motion for reconsideration should be granted to permit the Court to consider additional evidence from the Government. The cases the Court has found are not dispositive, because the Court closed the evidence in the case and ruled that the Government had failed to prove that the substance seized from Defendant was methamphetamine. It is clear that the Court has authority to continue a case to allow the Government to adduce additional evidence over objection of a defendant that the

---

[4] The Court observes that in *Melendez DS v. Massachusetts*, 129 S.Ct. 2527, 2532 (2009), the subject certificates were actually "analysts' affidavits," testimonial in nature and absent a showing that the analysts were unavailable to testify at trial and petitioner had an opportunity to cross-examine, petitioner was entitled to be confronted with the analysts at trial.

[5] **Rule 32.1. Revoking or Modifying Probation or Supervised Release**
**(b) Revocation.**
  **(2)** **Revocation Hearing.** Unless waived by the person, the court must hold the revocation hearing within a reasonable time in the district having jurisdiction. The person is entitled to:
  **(A)** written notice of the alleged violation;
  **(B)** disclosure of the evidence against the person;
  **(C)** an opportunity to appear, present evidence, and question any adverse witness unless the court determines that the interest of justice does not require the witness to appear;
  **(D)** notice of the person's right to retain counsel or to request that counsel be appointed if the person cannot obtain counsel; and
  **(E)** an opportunity to make a statement and present any information in mitigation.

Government should be not be allowed to "reopen its case" in violation of defendant's due process rights. See *United States v. Bennett*, 561 F.3d 799, 801 (2009) (where district court convened the hearing a third time over objection of the defendant of due process and double jeopardy arguments, there were no constitutional violations).

It is true that the Court declared that the evidence in the case was "concluded," however, Defendant presents no authority of any due process violation if the Court now allows the Government to introduce Government's Exhibit 2. At the evidentiary hearing, the Government presented substantial evidence that Defendant was in possession of Methamphetamine. Defendant admitted he had been using methamphetamine. The only new evidence is the report which confirms by lab testing that the material possessed by Defendant was methamphetamine. No further witnesses or other evidence were proffered. The Court will reopen the evidence in this case.

While the rules of evidence do not apply in revocation of supervised release hearings, trampling on centuries of jurisprudence with impunity is not indicated. *Indicia* of reliability at a minimum must be considered. Missouri State Highway Patrol laboratory testing is widely recognized for reliability and accuracy. The presence of a person to lay a foundation for admission of the report into evidence and to establish chain of custody, the Court concludes, is not necessary in this case, considering all of the undisputed facts and circumstances in this case. The Defendant admits he had been using Methamphetamine for two days; the material now identified as methamphetamine was taken from his clothing and the room occupied by him. The material was field-tested when Defendant was arrested and those tests concluded that the material was consistent with methamphetamine. The use of an expert in court to lay a foundation and

establish chain of custody would be *de minimis. See Redd,* at 784. Reliance on the rules of evidence to keep Government's Exhibit 2 from being introduced into evidence fails.

The Sixth Amendment to the United States Constitution and the Federal Rules of Criminal Procedure guarantee to a defendant cross-examination rights in judicial proceedings, except, in supervised release revocation hearings, the application of those rights is relaxed. The Court must engage in a balancing test to determine the extent of Sixth Amendment rights to be afforded a defendant in such revocation hearings. The Defendant shall have an opportunity to question any adverse witness unless the court determines that the interest of justice does not require the witness to appear. Fed R. Crim. P. 32.1(b)(2)9C). "To determine whether good cause exists for allowing evidence without confrontation, 'the district court must balance the probationer's right to confront a witness against the grounds asserted by the government for not requiring confrontation.'" (citing *United States v. Bell,* 785 F.2d 640, 642 (8th Cir.1986)). "The government must show that 'the burden of producing live testimony would be inordinate and offer[ ] in its place hearsay evidence that is demonstrably reliable.'" (citing *Bell*, at 643). *Farmer,* at 347. Good cause exists in this case for not allowing examination by Defendant of the laboratory technician in this case. In this revocation of supervised release hearing, the burden on the Government to produce the technician is greater than any benefit to Defendant. The Missouri State Highway Patrol has a very significant history of preparing reliable and accurate chemical testing procedures and results. Requiring a patrol officer to travel from and back to the laboratory in Jefferson City requires substantial time and resources, and any benefit to Defendant would be very slight, considering the facts and circumstances of this case, including Defendant's admissions and the field testing conducted in this case. The Court expects to allow Government's Exhibit 2 in evidence.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Kenneth Hibbert shall appear before this Court for a Final Revocation Hearing on **October 1, 2009**, at **3:00 p.m.**

So Ordered this 14th Day of September, 2009.

_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE